2022 IL App (1st) 170308-B
No. 1-17-0308
Opinion filed June 1, 2022

Third Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95 CR 26400 (01) |
| | ) | |
| TAKI PEACOCK, | ) | Honorable |
| | ) | Frank Zelezinski, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Ellis and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Taki Peacock, is currently serving concurrent respective sentences of 80 years,

30 years, 30 years, and 30 years of imprisonment for his convictions for the 1995 first degree

murder, aggravated kidnapping, aggravated vehicular hijacking, and armed robbery of the victim,

Rufus Taylor. The evidence at defendant's bench trial, which is more fully set out in the opinion

arising out of defendant's direct appeal (see *People v. Peacock*, 324 Ill. App. 3d 749 (2001)),

showed that defendant and a co-offender, Lawrence Wallace, planned to take the victim's car and

defendant obtained a gun from his sister-in-law. The next day, Wallace put a gun to the victim's

head and held him at gunpoint in the back seat of the victim's vehicle, while defendant drove them

to a secluded location. Thereafter, Wallace shot the victim twice, and defendant fired at the victim

once but missed. Wallace and defendant left in the victim's car and were apprehended in that vehicle in Indiana. The victim later died from his injuries. Defendant was 17 years old at the time of the offense.

¶ 2    Defendant's conviction and sentence were affirmed on direct appeal. *Id.* On September 27, 2001, defendant filed an initial postconviction petition, alleging that his constitutional rights were violated because his jury waiver was coerced through trial counsel's "misrepresentation and manipulation" and his confession was involuntarily given at a time when he was under the influence of drugs and alcohol. The first stage denial of that petition was affirmed on appeal. *People v. Peacock*, No. 1-02-0615 (2004) (unpublished order under Illinois Supreme Court Rule 23).

¶ 3    This appeal concerns defendant's September 12, 2016, successive postconviction petition, in which he argued that his 80-year sentence was an unconstitutional *de facto* life sentence pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012), and violated the proportionate penalties clause of the Illinois Constitution. The circuit court denied defendant leave to file his successive postconviction petition on October 12, 2016, finding that the petition was untimely and that defendant had failed to file a motion for leave to file the petition. Defendant appealed.

¶ 4    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(a)(1) (West 2018)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Only one postconviction proceeding is contemplated under the Act (*People v. Edwards*, 2012 IL 111711, ¶ 22), and a defendant seeking to file a successive postconviction petition must first obtain leave of court (*People v. Tidwell*, 236 Ill. 2d 150, 157 (2010)). The bar against successive

postconviction proceedings should not be relaxed unless (1) a defendant can establish "cause and prejudice" for the failure to raise the claim earlier or (2) he can show actual innocence under the "fundamental miscarriage of justice" exception. *Edwards*, 2012 IL 111711, ¶¶ 22-23; *People v. Smith*, 2014 IL 115946, ¶ 30.

¶ 5    Under the cause and prejudice test, a defendant must establish both (1) cause for his or her failure to raise the claim earlier and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). The cause-and-prejudice standard is higher than the normal first-stage "frivolous or patently without merit" standard applied to initial petitions. See *id.* ¶¶ 25-29; *Smith*, 2014 IL 115946, ¶ 35.

> "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶ 35.

¶ 6    "A defendant shows cause 'by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings.' " *People v. Wrice*, 2012 IL 111860, ¶ 48 (quoting 725 ILCS 5/122-1(f) (West 2010)). In other words, to establish "cause" a defendant must articulate why he could not have discovered the claim earlier through the exercise of due diligence. *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 72. A defendant shows prejudice by demonstrating that the claim so infected the trial that the resulting conviction or sentence violated due process. *Wrice*, 2012 IL 111860, ¶ 48. It is defendant's burden to establish a *prima facie* showing of both cause and prejudice in order to be granted

leave before further proceedings on his claims can follow. See *People v. Bailey*, 2017 IL 121450, ¶ 24.

¶ 7    In this court, defendant first contends that he should have been permitted to file his successive postconviction petition because the 80-year sentence imposed on his conviction for a crime committed while he was a juvenile constitutes a *de facto* life sentence and violates the eighth amendment of the United States Constitution. Defendant acknowledges that he may qualify for day-for-day credit, and accordingly, he will be required to serve at least 50%, or 40 years, of his 80-year sentence. Defendant contends that his sentence is a *de facto* life sentence, triggering the protections of *Miller* and requiring a sentencing court to consider defendant's youth and attendant characteristics in fashioning a sentence. Defendant further contends that the circuit court did not consider such factors, and accordingly, this court should remand his case for a new sentencing hearing.

¶ 8    In *People v. Buffer*, 2019 IL 122327, the supreme court reviewed the circuit court's denial of the defendant's postconviction petition, in which the defendant argued that his 50-year prison sentence, imposed for a crime he committed when he was 16 years old, violated the eighth amendment because it was a *de facto* life sentence. The supreme court considered where the line should be drawn at which a sentence constitutes a *de facto* life sentence and concluded that "a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment." *Id.* ¶ 41. Accordingly, the court found that the defendant's 50-year sentence, which was greater than 40 years, was a *de facto* life sentence. *Id.* ¶ 42.

¶ 9    Following the supreme court's decision in *Buffer*, this court initially concluded that defendant's 80-year sentence constituted a *de facto* life sentence. We recognized that defendant

could be eligible for day-for-day credit pursuant to which he could be eligible for release after exactly 40 years—on the dividing line between what the supreme court defined as *de facto* life and not *de facto* life sentences in *Buffer.* We noted that *Buffer* did not specifically address a situation in which a defendant has been sentenced to a lengthy prison sentence but was eligible for good-conduct sentencing credit. We concluded that to serve a sentence of 40 years, defendant would have to receive every single day of good conduct credit for which he could be eligible and that such receipt was not guaranteed. Accordingly, in the circumstances, we concluded that defendant's sentence constituted a *de facto* life sentence imposed without consideration of his youth, in violation of the eighth amendment. We reversed and remanded the matter for a new sentencing hearing.

¶ 10    The State petitioned the Illinois Supreme Court for leave to appeal. The supreme court denied the State's request but issued a supervisory order directing this court to vacate the judgment and to reconsider in light of its decision in *People v. Dorsey*, 2021 IL 123010, which it issued after our initial decision in this case. This court vacated our previous decision, as instructed, and granted the parties leave to file supplemental briefing on the impact of *Dorsey*.

¶ 11    In *Dorsey*, the court considered the impact of good-conduct credit in determining whether a defendant received a *de facto* life sentence requiring consideration of the principles enunciated in *Miller*, 567 U.S. 460. *Dorsey*, 2021 IL 123010, ¶ 1. The defendant in *Dorsey* received an aggregate sentence of 76 years' imprisonment but, like defendant here, he was eligible for day-for-day sentencing credit. *Id.* ¶¶ 50-51. The court noted that *Buffer* is a "fundamentally different" case because the sentencing scheme utilized in *Buffer* provided no opportunity for good-conduct credit. *Id.* ¶ 64. Therefore, "the more-than-40-years mark in *Buffer* is meant to be the line for a

*de facto* life sentence where there is no opportunity to demonstrate rehabilitation and obtain release short of serving more than 40 years in prison." *Id.*

¶ 12    The court reasoned that a day-for-day credit scheme provides defendants with an opportunity for early release through their own actions. *Id.* ¶ 52. By conforming their conduct to prison rules, defendants "can demonstrate growth and rehabilitation" and obtain release after serving half of their sentence. *Id.* Although the defendant may not receive all of the credit available, it is entirely within his power to shorten his sentence by demonstrating maturity and rehabilitation. *Id.* ¶¶ 53-54. There is no constitutional requirement that a juvenile defendant be guaranteed release from prison before serving a life sentence. See *id.* For eighth amendment purposes, what matters is that the defendant have an opportunity to earn a second chance at liberty. *Id.* ¶ 53.

¶ 13    Accordingly, the supreme court in *Dorsey* concluded that the day-for-day credit scheme allows the defendant " 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' before he spends more than 40 years in prison." *Id.* ¶ 65. This opportunity for release "short of a *de facto* life sentence" is "on par with discretionary parole for a life sentence," a sentencing scheme that "pass[es] muster under the eighth amendment." *Id.* ¶ 54 (citing *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016)). Accordingly, the supreme court held that the defendant's 76-year sentence, "which offers an opportunity for release after serving 38 years in prison, was not a *de facto* life sentence in violation of the eighth amendment." *Id.* ¶ 65.

¶ 14    In defendant's supplemental brief, he contends that *Dorsey* should not change our previous result. He argues that because he was sentenced to 80 years imprisonment, the loss of a single day of good conduct credit over his anticipated 40 years of incarceration would cause him to serve a *de facto* life sentence of 40 years and one day, even though such a small loss would demonstrate

"exemplary compliance with prison regulations rather than be an indication of defendant's lack of rehabilitation or maturity."

¶ 15    *Dorsey*, however, "made clear that *Miller*'s constitutional concerns pertain to the *statutory scheme* under which a juvenile defendant was sentenced, and not to the sentence he or she may end up serving." (Emphasis in original.) *People v. Thompson*, 2022 IL App (1st) 200463, ¶ 33. If the application of the day-for-day credit allows for an opportunity of release prior to the line drawn in *Buffer*, a challenge to a sentence pursuant to *Miller* must fail. *Dorsey*, 2021 IL 123010, ¶ 50.

¶ 16    Like the defendant in *Dorsey*, defendant here is entitled to day-for-day sentencing credit. After considering the application of day-for-day sentencing credit, defendant's prison term is 40 years, on the dividing line, but just short of, a *de facto* life sentence. See *Internet Inmate Status*, Ill. Dep't of Corr., https://www.idoc.state.il.us/subsections/search/inms_print.asp?idoc=K67561 (last visited May 19, 2022) [https://perma.cc/4QVD-LVPM] (indicating a projected parole date of August 15, 2035, 40 years after defendant went into IDOC custody on August 15, 1995).[1] Under *Dorsey*, defendant has not received a *de facto* life sentence, and *Miller*, 567 U.S. 460, and its progeny do not apply. *People v. Brakes*, 2021 IL App (1st) 181737, ¶¶ 34-38.

¶ 17    While we are sympathetic to defendant's argument that his sentence is on the boundary between a *de facto* and not *de facto* life sentence, and that the case "illustrates the difficulty inherent in adhering to bright-line legal rules," the fact remains that the supreme court decided that a sentence of 40 years or less is not a *de facto* life sentence, and we are bound by that decision. Additionally, two other courts have determined in similar circumstances that 80-year sentences with the possibility of day-for-day good conduct credit complied with the eighth amendment under

---

[1]This court may take judicial notice of information appearing on the IDOC website. *People v. Ware*, 2014 IL App (1st) 120485, ¶ 29.

the reasoning set forth in *Dorsey*. *People v. Beck*, 2021 IL App (5th) 200252, ¶ 37; *Thompson*, 2022 IL App (1st) 200463, ¶ 29. Following *Dorsey*, as we must, we conclude that defendant's 80-year sentence was not a *de facto* life sentence in violation of the eighth amendment where he is eligible for day-for-day sentencing credit and has the opportunity for release prior to the line drawn in *Buffer*. Accordingly, defendant is unable to establish the prejudice prong for bringing a successive petition.

¶ 18    Defendant next contends that even if this court concludes that *Dorsey* precludes his argument based on the eighth amendment, this court should nevertheless find that he satisfied the cause-and-prejudice test for filing a successive postconviction petition based on the proportionate penalties clause of the Illinois Constitution. Defendant contends that *Dorsey* "does not defeat a claim brought under the proportionate penalties clause" because that ruling "only dealt with the eighth amendment claim before it, declining to rule on the proportionate penalties challenge because the defendant forfeited his state constitution claim."

¶ 19    While the supreme court in *Dorsey* found that defendant's proportionate penalties claim was forfeited because it was raised for the first time in the supreme court, it went on to explain that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause." *Dorsey*, 2021 IL 123010, ¶ 74. In so holding, the supreme court emphasized that "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional claim, which is insufficient to establish 'cause.' " *Id.* (quoting *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 59).

¶ 20 Following *Dorsey*, reviewing courts have repeatedly concluded that *Miller* and its progeny do not provide petitioners seeking leave to file successive petitions with the requisite cause for challenging their sentences on proportionate penalties grounds. See, *e.g.*, *People v. Ruddock*, 2022 IL App (1st) 173023, ¶ 72 ("The supreme court's reasoning in *Dorsey* also establishes that the defendant in this case cannot satisfy the cause prong of the cause-and-prejudice test for bringing a successive postconviction petition with respect to his proportionate penalties claim under the Illinois Constitution."); *People v. Figueroa*, 2022 IL App (1st) 172390-B, ¶ 40 (finding that "*Dorsey* compels the conclusion that defendant's challenge to the constitutionality of his sentence fails under both the eighth amendment and the proportionate penalties provision of the Illinois Constitution"); *People v. Howard*, 2021 IL App (2d) 190695, ¶ 39 ("the supreme court recently settled this issue in [*Dorsey*, 2021 IL 123010, ¶ 74,] *** in holding 'that *Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause' "); *People v. Haines*, 2021 IL App (4th) 190612, ¶ 51 (citing *Dorsey* for the proposition that "[t]he emergence of some helpful support for a claim that already was raisable is not cause [for failure to raise the claim earlier]"); see also *People v. Torres*, 2022 IL App (1st) 201014-U, ¶ 19 ("[B]ased on the supreme court's reasoning in *Dorsey*, defendant in this case cannot satisfy the cause prong of the cause-and-prejudice test for bring a successive postconviction petition with respect to his proportionate penalties claim under the Illinois Constitution."); *People v. Knight*, 2022 IL App (1st) 210026-U, ¶ 17 (concluding that the defendant could not establish cause for failing to raise his proportionate penalties challenge in his initial postconviction petition since "[t]he recognition that sentencing youthful offenders requires a consideration of their emotional maturity, was a princip[le] recognized in Illinois for many decades before the defendant was sentenced and long before he filed his initial" petition).

¶ 21    Defendant, however, asks us to rely on *People v. Meneses*, 2022 IL App (1st) 191247-B, to conclude that his proportionate penalties claim is still feasible following *Dorsey*. The court in *Meneses* reasoned that the defendant's eighth amendment challenge did not survive *Dorsey*, but the defendant nevertheless may be entitled to relief under the Illinois proportionate penalties clause, which "provides greater protections than the eighth amendment does." *Id.* ¶ 22. We believe that *Meneses* is contrary to the weight of authority on the viability of a proportionate penalties claim following *Dorsey*, and we decline to follow it.

¶ 22    There is no dispute that the proportionate penalties clause was in existence prior to the time defendant filed his initial postconviction petition in 2001. Additionally, the idea that sentencing youthful offenders requires consideration of their emotional maturity was recognized in Illinois far before defendant was sentenced and long before he filed his initial postconviction petition. See *Dorsey*, 2021 IL 123010, ¶ 74. Although *Miller* and its progeny may provide additional support for a proportionate penalties argument, the emergence of such support for a claim that was already raisable does not constitute cause. *Id.* Accordingly, the defendant cannot establish cause for his failure to raise his proportionate penalties claim in his initial postconviction petition. Because a defendant must establish both cause and prejudice before filing a postconviction petition, the circuit court properly denied him leave to file his successive petition for postconviction relief. See *People v. Nichols*, 2021 IL App (2d) 190659, ¶ 23; *People v. Brown*, 225 Ill. 2d 188, 207 (2007).

¶ 23    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 24    Affirmed.

2022 IL App (1st) 170308-B

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 95-CR-26400(01); the Hon. Frank Zelezinski, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Manuela Hernandez, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, David Iskowich, and Koula A. Fournier, Assistant State's Attorneys, of counsel), for the People. |